G. Cone Smith and others, members of the County Democratic Executive Committee of Johnson County, as relators, and T. E. Darcy and others, the County Judge and County Commissioners of Johnson County, as interveners, sued C. L. Edgar and others, trustees of the Independent School District of the City of Cleburne, as respondents, in the District Court of Johnson County, to compel the trustees to allow relators and interveners to use certain school houses in the City of Cleburne for the purpose of holding democratic primaries on July 23rd, 1932, and August 28th, 1932, and for the purpose of holding the general election on November 8th, 1932. The District Court rendered judgment awarding relators and interveners a writ of *Page 51 
mandamus to compel the trustees to permit said school houses to be used for holding said primaries and general election, and the Waco Court of Civil Appeals affirmed the judgment of the District Court.
The Court of Civil Appeals based its judgment on the conclusion that article 2932 of the Revised Statutes so limited the right of the trustees to possess, control and manage public free school houses in a city which has assumed control and management of its public free schools and which has determined that such control and management shall be in the board of trustees, that the trustees could not lawfully withhold such houses from use for holding primaries or elections under the finding of the trial court that it was practicable to hold the primaries and general election in the school houses, despite the action of the trustees in refusing to consent to the holding of the primaries and election in the buildings under their control. 52 S.W.2d 68.
Article 2932 provides that:
"In all cases where it is practicable so to do, all elections shall be held in some school house, fire station or other public building within the limits of the election precinct in which such election is being held. No charge shall be made for the use of such building, except that any additional expense actually incurred by the authorities in charge of such building on account of the holding of the election therein shall be repaid to them by the party who would be liable for the expenses of holding the election under the existing law. If there be no public building so available, such election may be held in some other building."
1 We think it manifest that article 2932 governs only general and special elections and not primaries, since the place of holding primary elections is expressly and differently provided for in article 3103 of the Revised Statutes, which reads:
"The places of holding primary elections of political parties in the various precincts of the State shall not be within one hundred yards of the place at which such elections or conventions are held by a different political party. When the chairmen of the executive committees of the different parties cannot agree on the place where precinct primary elections to be held on the same day shall be held, such places in each precinct shall be designated by the county judge, who shall cause public notice thereof to be given at once in some newspaper in the county, or if there be none, by posting notices in some public place in the precinct." *Page 52 
It is not necessary for us to determine how the words "elections" and "election" would be construed in article 2932 under the decisions of Koy v. Schneider, 110 Tex. 369,218 S.W. 479, and Newberry v. United States, 256 U.S. 232, in the absence of article 3103. It suffices to say that the language of articles 2932 and 3103 makes clear the intention of the Legislature that article 2932 is designed to regulate places for holding governmental elections and article 3103 is intended to fix the places for holding party primaries.
2 Our interpretation of article 2932 avoids a grave constitutional question as to its validity. The question is: How could the court hold that the Legislature might lawfully compel the diversion of public school property to a non-governmental and mere party use, while adhering to its previous opinion that a statute was unconstitutional which directed the expenditure of public funds for a non-governmental party use? Waples v. Marrast, 108 Tex. 6, 184 S.W. 180. As said by this Court in Westerman v. Mims, 111 Tex. 38,227 S.W. 178, it is our duty to construe statutes, where their words reasonably admit of it, in such manner as to uphold their validity. 9 Texas Jur., sec. 63, page 485. In that case, as here, we recognize the soundness of the rule "that where a statute is susceptible of two constructions by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." United States v. Delaware H. Co., 213 U.S. 408, 53 L.Ed., 849, 29 Sup. Ct., 536; Grenada County Supervisors v. Brogden, 112 U.S. 269.
3 The board of trustees under the express terms of article 2772 of the Revised Statutes having "the exclusive control and management of such school property" and having "the exclusive possession thereof," and there being no statute undertaking to interfere with such possession or control for the benefit of mere political parties, the judgments of the courts below are wholly unauthorized in so far as they order the trustees to permit the democratic primaries to be held in the buildings in the custody of the board of trustees.
4 It is equally plain that article 2932 does not support the judgments of the courts below, requiring the trustees to permit the general election to be held in the school buildings, under the undisputed facts disclosed by this record. The discretion to determine whether it is practicable to hold elections in school houses, in cities assuming exclusive control and management, *Page 53 
through a board of trustees, of the public free schools within the limits of the cities, is to be exercised by the trustees. Article 2772, Revised Statutes. The uncontradicted evidence negatives any abuse of their discretion in the action of the trustees. The uncontradicted evidence conclusively shows that the trustees were reasonably and faithfully exercising their discretion in refusing to permit the school houses to be used for holding the general election therein.
It is undisputed that school has been for many years customarily continued on general election day within the limits of the City of Cleburne. The only witness for relators and interveners, who is secretary of the County Democratic Executive Committee, testified: "I think it could be arranged so only a small part of any of the buildings would have to be used for the actual holding of the elections. I doubt if it could be so arranged that it would not materially disturb the use of the remainder of the building for other purposes at the same time, that is, if school was going on." Every witness for the respondents, including trustees and superintendent of the public schools, testified to various compelling reasons for considering impracticable the holding of the general election in the school buildings, such as distraction of the children from their studies by election officials, voters, and workers, and risk of injury to the building in various ways.
We conclude on consideration of the entire statement of facts that it contains no evidence to warrant a judgment refusing to sustain the action of the board of trustees.
It is therefore ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed and that judgment be here entered that relators and interveners take nothing by their suit.